Cody R. Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
Shahin Rezvani (SBN 199614)
Shahin.Rezvani@capstonelawyers.com
Capstone Law APC
1875 Century Park East, Suite 1860
Los Angeles, California 90067
Telephone: (310) 556-4811
Facsimile: (310) 943-0396

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAMELA MOSSAZADEH, KELLIE CUSICK, ALEXANDER PENA, and JOEY ZAOKOPNY, individually, and on behalf of other members of the general public similarly situated,<br><br>        Plaintiffs,<br><br>    vs.<br><br>MONAHAN PRODUCTS, LLC, a Massachusetts limited liability company,<br><br>        Defendant. | Case No.: 2:25-cv-04862 MWF(PVCx)<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR:**<br><br>(1)  Breach of Implied Warranty under the Song-Beverly Consumer Warranty Act;<br>(2)  Breach of Implied Warranty under the Magnuson-Moss Warranty Act; and<br>(3)  Violation of California's Unfair Competition Law<br><br>**JURY TRIAL DEMAND**<br><br>**ACTION SEEKING STATEWIDE OR NATIONWIDE RELIEF** |

Plaintiffs Pamela Mossazadeh, Kellie Cusick, Alexander Pena, and Joey Zaokopny (collectively, "Plaintiffs") individually and on behalf of all others similarly situated, bring this action for damages and injunctive relief against Defendant Monahan Products, LLC ("Monahan," "UPPAbaby," or "Defendant"), and states:

## INTRODUCTORY STATEMENT

1. Plaintiffs bring this action individually and on behalf of all other similarly situated California consumers ("Class Members") who purchased, within the applicable statutes of limitations period, an UPPAbaby brand car seat (referred to herein as the "class car seats" or "the products"). These class car seats include, without limitation, any of the following models: **Mesa Max**, **Mesa V2, and Aria**.

2. This action concerns the advertisement and sale of defective child car seats by Defendant under the UPPAbaby name brand. The class car seats were sold with a defect which causes the child's body to sink low in the seat, resulting in a "C" position with chin-to-chest posture. Numerous consumers have reported their child experienced visible discomfort, excessive drooling, choking, crying, sweating, and respiratory issues while in the class car seats. While Defendant knew the class car seats were defective, it failed to disclose the defect to Plaintiffs and Class Members.

3. Through print, product package, internet, and other forms of advertising, Defendant warranted and promised the class car seats as free from defects and suitable for their intended use.

4. However, Defendant had superior and exclusive knowledge that its class car seats were sold with a defect which caused the car seats' child occupants to suffer distress, discomfort, excessive drooling, sweating, and respiratory issues.

5. The defect poses an unreasonable safety hazard to consumers and their children because the "C" position and chin-to-chest posture caused by the class car seats can obstruct the airway, leading to difficulty breathing or even positional

asphyxiation, especially in newborns with weak neck muscles. A child suffering these problems can also pose a distraction to the driver, as their attention turns from operating the vehicle to assessing the child's distress.

6. The defect is inherent in each class car seat and was present in each class car seat at the time of sale.

7. Defendant had exclusive and superior knowledge about the defect, and it thus had a duty to disclose material facts regarding the defect to its customers. Despite this knowledge, Defendant failed to disclose its knowledge of the defect, while selling its car seats to unwitting consumers, including Plaintiffs and Class Members. Plaintiffs and Class Members relied on Defendant's advertising in deciding whether to purchase, or pay a premium price for, the class car seats. Further, they reasonably expected that the class car seats would be fit for their intended use and free of defects. Despite the class car seats being defective, Defendant did not provide a refund and continues to refuse to refund Plaintiffs and Class Members' purchases of the class car seats, all to Defendant's profit and at the expense of innocent consumers.

8. Because Defendant will not notify Class Members the class car seats are defective, Plaintiffs and Class Members and/or their children are subjected to dangerous conditions.

9. Defendant knew about and concealed the defect in every class car seat, along with the attendant safety hazards, from Plaintiffs and Class Members, at the time of sale and thereafter. In fact, instead of repairing the defect in the class car seats, Defendant refused to acknowledge its existence.

10. As a result of their reliance on Defendant's omissions, Plaintiffs and other consumers have suffered an ascertainable loss of money and property on the purchase and/or premium price they paid for the class car.

FIRST AMENDED CLASS ACTION COMPLAINT

11. . If Plaintiffs and the Class Members had known about the defect at the time of sale, Plaintiffs and Class Members would not have purchased the class car seats or would have paid less for them.

## THE PARTIES

12. Plaintiff PAMELA MOSSAZADEH is a resident of Los Angeles, California in Los Angeles County.

13. Plaintiff KELLIE CUSICK is a resident of Long Beach, California in Los Angeles County.

14. Plaintiff ALEXANDER PENA is a resident of Los Gatos, California in Santa Clara County.

15. Plaintiff JOEY ZAOKOPNY is a resident of Lincoln, California in Placer County.

16. Defendant MONAHAN PRODUCTS, LLC, was and is, a Massachusetts limited liability company, and at all times hereinafter mentioned, a retailer, manufacturer, and/or seller of products in this county, the State of California, and the various states of the United States of America.

17. Plaintiffs are informed and believe, and thereon allege, that each and all the acts and omissions alleged herein was performed by, or is attributable to, MONAHAN PRODUCTS, LLC.

## JURISDICTION AND VENUE

18. This Court has jurisdiction over this action under 28 U.S.C. § 1332(d). The aggregated claims of the individual Class Members exceed the sum or value of $5,000,000, exclusive of interests and costs, and this is a class action in which the proposed Class numbers more than 100 and at least one plaintiff, on the one hand, and Defendant, on the other hand, are citizens of different states.

19. This Court has jurisdiction over Defendant because it is registered to conduct business in California, has sufficient minimum contacts in California, or otherwise intentionally avails itself of the California market through the

FIRST AMENDED CLASS ACTION COMPLAINT

promotion, sale, marketing, and distribution of its products so as to render the exercise of jurisdiction over it by California courts consistent with traditional notions of fair play and substantial justice. Moreover, Defendant's wrongful conduct (as described herein) foreseeably affects consumers in California.

20.     Venue is proper in this Court because, Defendant transacts business in this district and the acts and omissions alleged herein took place in this district.

21.     Defendant, through its business of promoting, selling, marketing, and distributing the class car seats, has established sufficient contacts in this district.

22.     In addition, a substantial part of the events or omissions giving rise to these claims and a substantial part of the property which is the subject of this action are in this district. Pursuant to California Civil Code section 1780(d), attached as Exhibit A is Plaintiffs' counsel's Declaration reflecting that a substantial part of the events or omissions giving rise to the claims alleged herein and a substantial part of property which is the subject of this action is situated in this district. This Declaration is not required pursuant to *Erie* and federal procedural rules.

23.     Accordingly, venue is proper in this Court pursuant to 28 U.S.C. § 1391(a).

## FACTUAL ALLEGATIONS

24.     Defendant MONAHAN PRODUCTS, LLC markets and sells high-end baby products such as car seats, strollers, and their respective accessories, under the brand name "UPPAbaby." UPPAbaby products, including the class car seats at issue in this action, are and/or were available for purchase through Defendant directly as well as through a number of authorized retailers nationwide such as, but not limited to, Amazon, Bloomingdales, Nordstrom, Babylist, and Pottery Barn Kids.

25.     This action concerns the Mesa Max, Mesa V2, and Aria models of car seats designed, marketed, distributed, and sold by Defendant under the UPPAbaby brand name. These seats are similar in their design, features, form, and function.

FIRST AMENDED CLASS ACTION COMPLAINT

Attached as Exhibit B and incorporated herein by reference are diagrams of the Mesa Max seat. Attached as Exhibit C and incorporated herein by reference are diagrams of the Mesa V2 seat. Attached as Exhibit D and incorporated herein by reference are diagrams of the Aria seat.

26. Defendant designed, marketed, distributed, and sold the class car seats with the defect during the Class Period and at least since 2022. On information and belief, Defendant sold millions of class car seats nationwide during the Class Period.

27. Through print, product packaging, internet, and other forms of advertising, Defendant warranted and promised the class car seats as free from defects and suitable for their intended use. For example, Defendant's website states the Mesa V2 car seat "maximizes ease to minimize error, which allows parents to move forward with confidence and security," and features a "Robust Infant Insert designed to optimize fit and body positioning." Babylist, one of UPPAbaby's authorized retailers, states the "the infant inlay is designed to optimize body positioning for infants between 4-11 lbs" in the Mesa Max car seat.

28. However, Defendant knew or should have known the class car seats had one or more design and/or manufacturing defects which it failed to disclose, and which result in airway obstruction and extreme discomfort. The defects impede the ability of, or otherwise prevent, the safe use of the car seat.

29. Hundreds, if not thousands, of purchasers of the class car seats have experienced issues with their children in a "C" position in the class car seats. Complaints filed by consumers with NHTSA demonstrate the defect is widespread and dangerous.

30. The following are some safety complaints relating to the car seats submitted to NHTSA (spelling and grammar mistakes remain as found in the original, bolded for emphasis):

FIRST AMENDED CLASS ACTION COMPLAINT

| Date of Incident | Summary |
|---|---|
| June 24, 2024 | A [XXX] INFANT WAS PLACED IN UPPABABY MESA MAX INFANT CAR SEAT FOR CAR SEAT TOLERANCE TESTING IN THE HOSPITAL. THE PARENT REQUESTED TESTING DUE TO CONCERNS RAISED IN ONLINE REVIEWS BY OTHER PARENTS. THE INFANT HAS NO KNOWN MEDICAL CONDITIONS OR RISK FACTORS FOR CARDIO-RESPIRATORY COMPROMISE. **THE INFANT HAD POOR OXYGEN SATURATION FOR GREATER THAN 60 SECONDS ALONG WITH DECREASED HEART RATE FOR 15-20 SECONDS. THE INFANT REQUIRED STIMULATION TO RECOVER. THE INFANT WAS TAKEN OUT OF THE CAR SEAT HAD NO FURTHER DIFFICULTY BREATHING. HEART RATE RETURNED TO NORMAL.** THE INFANT WAS PLACED IN A DIFFERENT MODEL CAR SEAT AND REPEAT TESTING WAS DONE WITHOUT INCIDENT. **THE CAR SEAT DESIGN IS NOTED PLACE THE BABY'S BODY IN A CURVED POSITION WHICH IS DIFFERENT FROM THE STANDARD POSITION OF OTHER INFANT CAR SEATS.** THIS POSITIONING IS BELIEVED TO HAVE CAUSED CARDIO-RESPIRATORY COMPROMISE IN THIS INFANT. INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6) |

FIRST AMENDED CLASS ACTION COMPLAINT

| July 16, 2024 | **OUR SON NO MATTER HOW WE TRY AND POSITION HIM HIS CHIN IS TOUCHING HIS CHEST AND STARTS TO BUBBLE DURING OUR CAR RIDES IN THE MESA MAX. HE ALSO SEEMS TO OVERHEAT IN IT AND COMES OUT SWEATY EVEN WITH THE SHORTEST CAR RIDE.** WE CONTACTED THE MFG AND THEY TOLD US HE WAS TOO BIG FOR INFANT INSERTS AND TOO SMALL IN THE BUCKET ITSELF.. AND TO WRAP A DISH TOWEL AROUND THE CROUCH BUCKLE TO HELP KEEP HIM PUSH BACK MORE. WE THEN MET WITH A COMPANY REP WHO ADDED ADDITIONAL PADDING IN THE BACK OF THE SEAT TO HELP POSITION HIM BETTER. NONE OR THESE "FIXES" REALLY SEEMED TO HELP IN MY OPINION, AS HE STILL SCREAMS AND BUBBLES WHEN IN THIS SEAT. |
|---|---|
| July 18, 2024 | REGARDING 2023 UPPABABY MESA MAX CAR SEAT. ONCE MY CHILD REACHED 4 MONTHS OF AGE, AND 15 POUNDS, IT WAS APPROPRIATE TO REMOVE INFANT INSERT FROM CAR SEAT. AFTER DOING SO, **THE CAR SEATS C SHAPE CREATED EXTREME CHIN TO CHEST WITHIN INABILITY TO PLACE FINGERS UNDER CHIN.** ADDITIONALLY THE SLIDING (NON LOCKABLE POOSTIONING) HEADREST/SHOULDER HARNESS COMBO WOULD SLIDE DOWN DURING CAR RIDES |

FIRST AMENDED CLASS ACTION COMPLAINT

| | |
|---|---|
| | OR IF CHILD STRETCHED IN SEAT, PUSHING HEADREST TO CHILD'S SHOULDERS CAUSING FURTHER SLOUCHING FROM C SHAPE BASE. **DURING CAR RIDE, CHILD APPEARED DISCOLORED AND DROOLING EXCESSIVELY. I PULLED OVER TO FIND WHAT APPEARED TO BE MY CHILD STRUGGLING TO BREATHE DUE TO EXTREME SLOUCH/CHIN TO CHEST AND HEADREST SLID ALL THE WAY DOWN TO NEWBORN POSITIONING.** AFTER INCIDENT, FIT PHOTOS WERE SUBMITTED TO MANUFACTURE TO ENSURE PROPER FIT AND WAS CONSIDERED CORRECT BY MANUFACTURER. MANUFACTURER IMMEDIATELY ISSUED FULL REFUND. I REPLACED CAR SEATS WITH NUNA PRODUCTS. MANUFACTURER NOW CEASING ALL PRODUCTION AND SALES/CANCELLING PROCESSING ORDERS OF CAR SEAT. STATING THE ARE DISCONTINUING DUE TO "POOR SALES" INSTEAD OF MULTIPLE SAFETY COMPLAINTS. IF THAT REASONING WERE TRUE, THEY WOULD NOT BE CANCELLING EXISTING UNFILLED ORDERS. THIS CAR SEAT IS UNSAFE AND SHOULD BE RECALLED FOR OTHER PARENTS UNKNOWINGLY PUTTING CHILD AT RISK. |
| August 1, 2024 | MY UPPABABY MESA MAX KEPT MY BABY ALWAYS IN A BAD POSITION, THEY SENT OUT A |

FIRST AMENDED CLASS ACTION COMPLAINT

| | | |
|---|---|---|
| | | FOAM TO ADD TO THE CAR SEAT BUT EVEN WITH THIS FOAM **BABY WAS IN A POSITION THAT IS A RISK OF SUFFOCATION, BABY'S CHIN WAS ALWAYS TO HER CHEST, BABY WOULD ALWAYS GET RED AND WOULD DROOL (SHE NEVER DROOLED) WHEN BABY CRIED SHE ALWAYS SEEMED TO CHOKE ON HER SALIVA WHEN SHE WAS IN THE CAR SEAT**, NEVER ENCOUNTERED THIS ISSUES WHILE BABY WAS OUT OF THE CAR SEAT. |
| | August 13, 2024 | THE UPPABABY MESA MAX IS CAUSING SO MANY HEAD POSITION PROBLEMS THAT THE MANUFACTURER HAS DISCONTINUED THE PRODUCT. FOR CURRENT OWNERS THEY ARE OFFERING A SET OF 2 FOAM PADS TO HELP WITH THE PROBLEM. 1. IF THERE ARE SO MANY ISSUES THIS SHOULD BE RECALLED. 2. CAR SEAT SAFETY ADVOCATES ARE ALWAYS TELLING MOMS NOT TO ADD ANYTHING TO THE SEAT AND NOW THEIR REMEDY IS TO ADD FOAM? IT FEELS UNSAFE. 3. COMMUNICATION FROM UPPABABY ABOUT THIS HAS NOT BEEN WIDESPREAD. |

**Defendant Had Exclusive Knowledge of the Defect**

31.    Defendant had superior and exclusive knowledge of the defect and knew or should have known the defect was not known or reasonably discoverable by Plaintiffs and Class Members before they purchased the class car seats.

32.    Plaintiffs allege before Plaintiffs purchased their car seats, and since

FIRST AMENDED CLASS ACTION COMPLAINT

at least 2022, Defendant knew about the defect through sources not available to consumers, including, but not limited to, pre-release testing data, early consumer complaints about the defect to Defendant and related retailers, testing conducted in response to those complaints, high failure rates, and return and exchange data, among other internal sources of aggregate information about the problem.

33.    Indeed, Plaintiffs allege at all times during the relevant time period, Defendant monitored NHTSA and various other websites, as well as received complaints and feedback from consumers, to evaluate its products, including the class car seats at issue. In fact, in several of the NHTSA complaints described above, several of the complainants had contacted Defendant directly to address their concerns with the class car seats. Plaintiffs are informed and believe and based thereon alleges at all times during the relevant time period, Defendant reviewed and/or used complaints and feedback from consumers about the class car seats' positioning issues to evaluate them.

34.    Complaints concerning the class car seats are also found on other websites. For example, the following are relevant portions of some complaints relating to the car seats submitted on Amazon.com, Babylist.com, and Defendant's own website, UPPAbaby.com (spelling and grammar mistakes remain as found in the original):

| Amazon.com - UPPAbaby Mesa Max | |
| --- | --- |
| **Date of Review** | **Summary** |
| August 12, 2024 | 1. My infant hated being in this car seat. The SIP head protectors always seemed to make him uncomfortable, and made it hard for us to actually get him in the seat. He also cried ALOT in this seat.<br><br>2. **Removing one of the infant pads created a C shape to** |

FIRST AMENDED CLASS ACTION COMPLAINT

| | |
|---|---|
| | **his spine, tucking the chin into the chest** (can cause SIDS). I'm seeing this on alot of other reviews now. On a plus side- I recently received additional padding from UppaBaby to prevent this (so, at least they stand behind their product). This piece was sent I believe to all registered carseats (so make sure whatever product you DO purchase ALWAYS register it with the manufacturer). |
| | |
| October 22, 2024 | **Amazon Customer:** Many people have complained about the fit and safety of this car seat. **My baby's chin rests on his chest when he is in it. If he does fall asleep in the car seat, he'll wake up coughing from not being able to breathe.** Uppababy offers a foam insert you can get sent to you, due to the uncomfortable fit. I recommend just going with another car seat. |
| February 29, 2024 | **Biki:** DO NOT BUY THIS! **My baby almost died in this car seat due to positional asphyxia. Once the infant insert is removed it t creates a c-curve in baby's spine which leaves them chin to chest.** I was lucky to have been able to pull my baby out in time for her to normalize her breathing. She was only in the seat for 15 minutes as we ran out for a quick errand. We had to call 911 and pull off of the highway to make sure she was ok. This product needs to be recalled. |
| August 11, 2024 | **Karin:** I bought this carseat thinking it would be convenient since I had the stroller. I DO NOT recommend it. **No matter how I position it, with or without the** |

FIRST AMENDED CLASS ACTION COMPLAINT

| | |
|---|---|
| | **infant insert, my baby ends up chin to chest.** I'm going to be buying a new seat immediately. Such a disappointment, and no wonder this carseat is no longer available. |
| September 28, 2024 | **Anthony:** Do not buy this for your child. Uppababy stopped selling this product for a reason. I'm surprised they're not recalling this product yet… |
| August 25, 2024 | **Shane M:** DO NOT BUY. Uppababy has stopped manufacturing this product due to the shape causing issues with SIDS once the infant insert is removed. |
| December 9, 2024 | **Ci Ko:** Causes baby's neck to slump over. Absolutely unsafe would not recommend to anyone. |
| October 13, 2024 | **Karissa Munoz**: I have not ever written a review but other parents need to know. **This seat has constantly made my baby cry ever since taking out the newborn insert. She is squished, and sits chin to chest without the infant insert.** There were reports of obstruction of airway from other parents and in turn the company sent out additional foam to add into the seat, however it didn't improve the fit for my child much, if at all. This car seat is no longer sold on the uppababy website and for that I feel it should be recalled completely. I wish I could return it for a full refund but sadly I purchased in February for my baby due end of July. While I love my uppababy Cruz stroller; purchasing this car seat has been my greatest regret. Should have just purchased a Chicco car seat because honestly the quality of their car seats surpass uppababy. |

FIRST AMENDED CLASS ACTION COMPLAINT

| August 17, 2024 | **Avi:** Newborn kid has always disliked the seat, but begab crying uncontrollably when we took the insert out. **His chin was always positioned to touch his chest, despite our efforts to watch videos and adjust it.** Uppababy has now removed it from their shelves due to the complaints, and I urge you all to stay away from this car seat. |
|---|---|
| August 4, 2024 | **Amazon Customer: The seat is shaped in a way that constricts baby's airways. I noticed when we drove home from the hospital that the angle of the seat forced baby's chin to his chest and his breathing was labored.** I returned to the store and they said it was correctly installed and fit properly. Today my 3 month old almost suffocated and I was HORRIFIED when the store owner told me it's a problem they are seeing with this car seat! PLEASE DO NOT USE THIS CARSEAT IT WILL PUT YOUR BABY IN DANGER. we threw ours in the trash and purchased a peg Perego |
| July 21, 2024 | **Amazon Customer:** Do not buy this product. We thought the problem was with our child, but then we saw all the horrible reviews noting the same problem. **Our child screamed getting into, while in, and getting out of this car seat. The shape of this car seat effectively forces your child to be in a C-shape. Not only is that uncomfortable, but it also makes it difficult for the child to breathe easily.** We use other UPPAbaby products, but this one is a disaster. I can't believe they are still selling this after seeing how many people are refusing to use it for |

FIRST AMENDED CLASS ACTION COMPLAINT

| | |
|---|---|
| | safety concerns. |
| July 10, 2024 | **MLG:** You buy a lot of things for your first baby and it's a learning process throughout. Unfortunately I regret this seat more than any other purchase. I was between this and the Pipa, but I went with this one so I could use it with our stroller without an adapter and so I could travel without a base. I've used it without our stroller twice because he hates it so much, and ended up carrying him both times. I wouldn't dare travel with this seat unless I wanted to torture the other travelers. |
| | I get maybe 5 minutes in this seat before the screaming starts and it does not stop until we take him out. No pacifier or distraction can help. We'll be replacing it this month, he's 3 months old and 18 pounds. I thought maybe he just hated car seats until we got a convertible for my husband's vehicle and we had our first peaceful car ride in months. He played, smiled, even fell asleep. I don't have another infant seat to compare to but this one just seems off. It's easy to install, it feels nice, it looks nice, it has all the safety features you want. |
| | **That being said my baby looks crunched up in this seat. There's a severe curve in the seat itself, it causes his chin to tuck into his chest, and the headrest is huge.** The seat also seems to squish him in on the sides and contribute to his discomfort. It's hot because it's so enclosed. **He's very obviously hated this seat since I had to pull out the infant insert when he was 3 weeks old.** I love our stroller |

| | from UB but this seat really misses the mark. |
|---|---|
| June 15, 2024 | **Liv:** We chose this car seat due to the fantastic safety features and ease of use with clicking it in and out of the car and stroller (reason for 2 stars) but unfortunately are now discontinuing use and purchasing another brand. The first red flag was when I went for a car seat inspection and they could not get over how bulky the insert was, new headrest & the angle of the seat. Said they had never seen anything like it. **From the moment we left the hospital and every use after, I felt so anxious putting my baby in this seat as it did not seem like the proper head/chin positioning. She looked so scrunched. I was constantly worried she couldn't breathe right, even pulling over once when she was screaming and thrashing around to check & make sure she could breathe.** Sometimes she would scream but other times she would fall asleep without complaint. As a FTM, I convinced myself I was just paranoid and anxious since it wasn't happening consistently - after all Uppababy has a stellar reputation and surely this car seat has undergone extensive testing….Maybe my baby just wasn't a car seat fan? Well we are going on a roadtrip soon & the anxiety of the seat returned since she will be in it for so long and I started looking at online forums and reviews again… what I have read has confirmed my fears that this seat needs some serious reevaluation by Uppababy. I'll never know if my baby really just wasn't a fan of being in the seat or if it was |

| | |
|---|---|
| | a larger issue and she was having trouble breathing all along, but it's absolutely not worth the risk!!! I wish I would have listened to my gut and not downplayed it as FTM anxiety. So grateful that we have not experienced some of the scary situations that seem to have occurred with this seat, but your baby's safety & your sanity is not worth the potential risk this car seat poses. |
| March 30, 2025 | **Abby:** The only good thing about this carseat is its compatibility with the UB strollers. **The C shape of this seat forces baby's chin to their chest, putting them at risk for positional asphyxiation. My baby's breathing was loud and labored while in the seat, especially after he outgrew the newborn insert. I had a facetime consult with Uppababy about this where they told me a baby's chin on their chest is not actually a danger, but that didn't seem right to me so I went to a CPST who said they were completely wrong and that my baby's position in the car seat was really dangerous.** They tried making adjustments to the tightness of the harness, angle of the install, etc but they could not get it to a point where they were comfortable saying it's safe. I went to a specialty car seat store to try baby out in other UB seats and they all had that issue. My only other option now is to replace the seat, and we're just going straight to a nuna revv. I'm really sad about this because Iove all of Uppababy's other products but their car seats are just awful. |
| October 24, 2024 | **Josi: My baby is hunched and uncomfortable in the** |

FIRST AMENDED CLASS ACTION COMPLAINT

| | |
|---|---|
| | **seat. I figured out that it was originally not sent with the infant insert so uppababy sent that and I thought it would fix the problem. It did not.** I did more research and found out that it is missing another foam piece that was not originally installed on the car seat. They are sending that now. I have little hope that it will fix her position.<br><br>For the price of this car seat, I did not think I would have to troubleshoot so many problems with no help from uppababy. I also wonder about the safety when I didn't have these pieces. |
| March 3, 2024 | **Amazon Customer:** I wouldn't buy this car anymore after using it for 3 months. **Baby looks super uncomfortable and his chin and neck aren't well positioned.** We decided to spend more money on it thinking that we were boughting the best one and it is a disaster. It should be recalled |
| September 30, 2023 | **Jordan:** I hate this car seat. The extra head protection is a perk but good lord does my baby look like he is squished and choking in this thing. It's basically impossible to get your infant positioned correctly. Too late to return it so will probably just switch to regular car seat earlier<br><br>Don't get this. Literally don't. Also so heavy |

| Amazon.com - UPPAbaby Mesa V2 | |
|---|---|
| **Date of Review** | **Summary** |
| July 26, 2024 | **Riley: My now 10 week old will scream bloody murder** |

FIRST AMENDED CLASS ACTION COMPLAINT

**the entire time he's in this seat.** Even if it's for over an hour. We've tried everything from removing the shoulder strap padding and infant insert and adding toys to the bar. He won't stop screaming. As the parent I hate the car seat for my own reasons. It's heavy. It states you don't need the base/when using a different car you can install it with the seat buckle like an old school car seat. It slides around. Only did that once and do not trust with without the base. It's so hard to get the baby in and out of the thing. It's a torture device I'm convinced. So mad I missed the return window. We finally caved and ordered a different one today after a horrible ride in the car. **Idk if it's the recline or shape or the headrest padding but he is otherwise a very happy baby and screams blood curdling screams the entire time he's in it.** I thought we had pinched his skin with the buckle how bad it is. 10/10 do not recommend. Only bought it because it fit with the stroller (which we love) but I wish I never bought this waste of money

| June 18, 2024 | **Shahana:** I am so bummed on this car seat! It looks great and is probably safe, however, getting my baby in and out was so challenging and **she cried the entire she was in it from entry to exit. The bucket is too deep and was clearly very uncomfortable for her.** The head area is way too tight unless your baby has a very small head. I would get anxiety each time I had to out her in it due to the fact I knew she was going to cry the entire car ride. My 2 older |

FIRST AMENDED CLASS ACTION COMPLAINT

| | |
|---|---|
| | kids(toddlers) would hate going anywhere with her in the car because of how much she would cry. I bought Nuna and she didn't cry once and was visibly much more comfortable. Worth the money for many reasons, mainly my sanity! |
| | **skdora:** Pretty disappointed in this car seat, especially for the price tag. Consider this seat is one of the higher price points I had higher expectations. The installation is great, love the auto adjust feature but it makes it a little hard to remove the latches. The seat itself looks like it's be very comfortable but is incredibly difficult to tighten when baby is in there. I'm hoping it's the newborn inserts that make it difficult to adjust so that this issue is a bit better once babe is bigger. **When baby is actually in the seat, they look so uncomfortable and squished up, it makes car rides that much worse.** Also, the sun shade lines up with the handle making it so uncomfortable to carry AND have the sunshade down. I have very small wrists and can barely fit my arm through to carry when the shade is down, so inconvenient when trying to shade baby's face. Love that this clicks into the UB stroller we already have (I have issues with it as well). All in all I am so disappointed in the UppaBaby products we've invested in and would NOT be getting them again in the future. As far as car seats, we were much happier with our Graco car seat we used with our first child. |

FIRST AMENDED CLASS ACTION COMPLAINT

| Babylist.com - UPPAbaby Mesa Max | |
|---|---|
| **Date of Review** | **Summary** |
| March 10, 2025 | **Holly R.:** This is a terribly designed car seat. **Once the infant insert is removed, there is no support & my baby is slouched over & unable to sit upright.** She is distressed every time she has to ride in this seat. Will not be buying UppaBaby products in the future. |
| October 8, 2024 | **Rae:** As a first time mom I bought this because I was told it was one of the safest car seats, and not knowing any better, I wanted the safest for my baby. Total waste… like the other reviews, **it squishes my baby down, even if I try to sit her up, and it gets SO WARM.** I keep it at daycare so that it's in AC all day but still on my drive home my baby is **SWEATING**. Super disappointed and feel tricked. Listen to the reviews and do not purchase. |
| October 7, 2024 | **Beth S.:** I trusted the UPPAbaby name when choosing the Mesa Max in Gregory. I liked the side impact protection rating and the base's recoil bar, which I thought ensured superior safety and quality. I also appreciated that the car seat didn't use chemicals for flame retardancy. However, it turned out to be incredibly unsafe. My daughter was born well within the weight limit, but **she failed the hospital's car seat test multiple times. The medical staff confirmed that if we had used this car seat to bring her home, it could have suffocated her.** I'm grateful we asked for the test, but heartbroken that the Mesa Max could have had tragic consequences. Safety should always come first. |

FIRST AMENDED CLASS ACTION COMPLAINT

| September 9, 2024 | **Monica A.:** This car seat is being returned because it is not safe for infants. Parents should be warned as the manufacture itself discontinued sales of this model for safety concerns. If you do order this product, or have ordered this previously and are unable to return it, be sure to visit the Uppababy website to register your product and also order the foam kit that has been distributed as a temporary fix to the unsafe c shape until a formal recall is issued. It is my understanding that there is an impending recall, of which I have notified Babylist. |
|---|---|
| August 22, 2024 | **Samantha P.:** I really wanted to love this seat since I love my Uppababy Vista stroller but unfortunately, this car seat isn't great. My daughter was uncomfortable from day one but it became so much worse once it was time to remove the infant inserts. **Her chin goes directly into her chest, even with the adjustments suggested by the UppaBaby team. My daughter's pediatrician also commented that she didn't like my daughter's position in the seat. Unfortunately, the deep c-shape of the chair is less than ideal and can potentially cause asphyxiation.** Hoping to switch to the Aria as it seems to have more of a straight back and not such a deep c-shape! |
| August 12, 2024 | **Nimrit M.:** My son could not sit properly in it from day 1. **This car seat is "c-shaped"** which as a new mom i didn't know mattered but essentially **his chin was to his chest which isn't a safe position for infants.** We will be returning for another car seat. |

FIRST AMENDED CLASS ACTION COMPLAINT

| July 30, 2024 | **Bee:** My child never looked comfortable and **always had her head tilted funny in it** |
| July 12, 2024 | **Cait:** I wish we had read the reviews before purchasing this car seat. Our baby does not look comfortable. **His chin tucks in and he cries the entire time he is in it.** As new parents we thought this car seat would be great coming from uppababy but so far it has not been a great experience. We are looking into another car seat. |
| January 14, 2024 | **Sireena L.:** Waste of money. Hate this car seat. My infant hates it. **Her chin hits her chest which can cause positional asphyxia.** This scares me and should be called for a recall. It's also hard putting her in and taking her out. |

| **UPPAbaby.com - UPPAbaby Aria** | |
| **Date of Review** | **Summary** |
| March 30, 2025 | **Lizzie:** I wanted to really like this product because it clicks into my Vista V3. The car seat looks amazing and comfortable, but my child hates it! **He screams like he's in pain when I put him in it. I feel like it may be hurting his spine as he tries to reposition his back.** I've tried repositioning the head rest and made sure the harness was fit correctly. I even took out the back support to see if that would help, but it only gave him a little more room and he still screams like he is in pain. |
| Approximately February 2025 | **Kara:** My poor little guy outgrew this after we had to take the preemie insert out. It's WAY too deep. It's very small. The way he sits in there does not look comfortable and his |

> knees are pressed so far up I feel so bad for him. One side does not click off very well when taking it off the stroller. I do like the longer sun shade and that it's vented. It is also very lightweight but that's because it's seriously so tiny.

35.     On or around August 2024, Defendant sent a notice ("the Notice") and a Foam Insert Installation Procedure ("the Procedure") to registered owners of the Mesa Max car seat. In the Letter, Defendant characterized the "C" shape defect as merely a matter of comfort:

> We've received feedback that some children are not sitting comfortably in the Mesa Max Infant Car Seat after the infant inlay is removed. While we've made improvements to address this, enclosed is a two-piece foam kit we've sent to all registered Mesa Max owners who may benefit by ensuring a better fit for a wider range of infants.

36.     The included Procedure, however, instructed owners to check if their Mesa Max car seats already include foam in the backrest area of the seat and, if not, to adhere two included pieces of foam to the car seat themselves. The Procedure did not make an exception for children who may be comfortable without the foam inserts and instructed all owners to install the included foam inserts if their car seats did not already have them. The discrepancy between how Defendant characterizes the issue to owners and what it instructs owners to do about the issue indicates Defendant knew the shape of the car seat was a safety issue, and not merely a comfort issue.

37.     Through testing, research, and complaints, among other things, Defendant knew or should have known the class car seats were defective because their shape places babies in a dangerous "C" position, causing them to sink low in the seat resulting in chin-to-chest posture and obstruction of the airway.

FIRST AMENDED CLASS ACTION COMPLAINT

38. The existence of the defect is a material fact which a reasonable consumer would consider when deciding whether to purchase, and/or how much to pay, for the class car seats. Had Plaintiffs and Class Members known the class car seats were defective, they would not have purchased the class car seats or would have paid less for them.

39. Reasonable consumers, like Plaintiffs, reasonably expect a child's car seat will be safe, will function in a manner which will not pose a safety hazard, and will be free from defects. Plaintiffs and Class Members further reasonably expect Defendant will not sell car seats with known safety defects and will disclose any such defects to its consumers when it learns of them. Plaintiffs and Class Members did not expect Defendant to fail to disclose the defect to them and to continually deny its existence.

**Defendant Actively Concealed the "C" Shape Defect**

40. While Defendant has been fully aware of the "C" shape defect in the class car seats, it actively concealed the existence and nature of the defect from Plaintiffs and Class Members at the time of purchase, and thereafter. Specifically, Defendant failed to disclose or actively concealed at and after the time of purchase:

      (a)    any and all known material defects or material nonconformity of the class car seats, including the "C" shape defect described herein;

      (b)    the class car seats were not in good working order, were defective, and were not fit for their intended purposes; and

      (c)    the class car seats were defective, despite the fact Defendant learned of such defects through customer complaints, monitoring of NHTSA and various other websites, testing and related research data, as well as through other internal sources.

FIRST AMENDED CLASS ACTION COMPLAINT

41.   To this day, Defendant still has not notified Plaintiffs or Class Members the class car seats suffer from systemic defects which cause babies to go into a chin-to-chest position.

42.   Defendant's unfair and deceptive business practices caused Plaintiffs and other California consumers to lose money: they purchased or paid a premium for the class car seats when they otherwise would not have. Plaintiffs, on behalf of themselves and all other similarly situated persons, seek actual and/or compensatory damages, restitution and equitable relief, costs and expenses of litigation, attorneys' fees, and all other available relief for Plaintiffs and all Class Members as described below.

## PLAINTIFFS' FACTS

**Plaintiff Pamela Mossazadeh**

43.   Plaintiff Pamela Mossazadeh is domiciled in and is a citizen of California.

44.   In or around March 2024, in Los Angeles, California, Plaintiff Mossazadeh purchased the UPPAbaby Mesa Max car seat online from the Bloomingdale's website and registered the car seat shortly thereafter on the UPPAbaby website.

45.   Plaintiff Mossazadeh purchased her car seat primarily for personal, family, or household purposes. At all times, Plaintiff Mossazadeh, like all Class Members, used the car seat in a foreseeable manner, pursuant to instructions, and in the manner in which it was intended to be used.

46.   Passenger safety and reliability were important factors in Plaintiff Mossazadeh's decision to purchase the UPPAbaby Mesa Max car seat. Before purchase, Plaintiff Mossazadeh and her husband reviewed the website where they purchased the car seat and researched information about the car seat including, including, but not limited to, the Bloomingdale's website, various blogs online, YouTube videos, Consumer Reports, and other websites which described the

product's safety information among other features of the product. Additionally, Plaintiff Mossazadeh and her husband had used another UPPAbaby car seat model for their older child in the past and trusted the brand because they had had a good experience. Plaintiff Mossazadeh believed that the UPPAbaby Mesa Max would be a safe and reliable car seat and based on the information she and her husband read and considered, Plaintiff Mossazadeh ultimately purchased the UPPAbaby Mesa Max car seat.

47. Had Defendant disclosed its knowledge of the defect, Plaintiff Mossazadeh would have seen such disclosures and been aware of them. Defendant's omission of this knowledge was material to Plaintiff Mossazadeh. Like all class members, had Plaintiff Mossazadeh seen such disclosures and been aware of the defect, she would not have purchased the UPPAbaby Mesa Max car seat or would have paid less for it.

48. Plaintiff Mossazadeh and her husband started using the Mesa Max car seat when their baby was a newborn. When the newborn's positioning in the car seat was assessed at the hospital, hospital staff told Plaintiff Mossazadeh that the baby's positioning was strange, and that perhaps the infant insert should be removed. However, Plaintiff Mossazadeh and her husband did not remove the insert because UPPAbaby recommends the insert be used until the baby is over 11 pounds. After removing the infant insert at the recommended time, when the baby was over 11 pounds, the baby's positioning worsened dramatically, with the baby sinking into a "C" position with the chin touching the chest. This resulted in significant and worsening discomfort, excessive crying, screaming, and difficulty breathing during car rides. Plaintiff Mossazadeh is a nurse and immediately recognized the baby's position was unsafe and uncomfortable. However, she was hesitant to complain because they had seen many ads from Defendant marketing its UPPAbaby Mesa Max car seat as safe and a perfect fit for babies. However, after seeing similar complaints online, Plaintiff Mossazadeh realized the issue was due

FIRST AMENDED CLASS ACTION COMPLAINT

to the car seat.

49. As a result of the defect, Plaintiff Mossazadeh lost confidence in the ability of the car seat to provide safe transportation for her baby, and after approximately four months of use, Plaintiff Mossazadeh replaced the car seat. Plaintiff Mossazadeh will be unable to rely on UPPAbaby's advertising or labeling in the future, and so she will not purchase another UPPAbaby car seat, although Plaintiff Mossazadeh would consider doing so were the Defect remedied.

**Plaintiff Kellie Cusick**

50. Plaintiff Kellie Cusick is domiciled in and is a citizen of California.

51. On or around April 14, 2024, in Long Beach, California, Plaintiff Cusick purchased the UPPAbaby Mesa Max car seat online from the Babylist website and registered the car seat on the UPPAbaby website on or around August 18, 2024.

52. Plaintiff Cusick purchased her car seat primarily for personal, family, or household purposes. At all times, Plaintiff Cusick, like all Class Members, used the car seat in a foreseeable manner, pursuant to instructions, and in the manner in which it was intended to be used.

53. Passenger safety and reliability were important factors in Plaintiff Cusick's decision to purchase the UPPAbaby Mesa Max car seat. Before purchasing the UPPAbaby Mesa Max car seat, Plaintiff Cusick reviewed the website where she purchased the car seat and researched information about the car seat including, but not limited to, the UPPAbaby's websites and other websites including Amazon for UPPAbaby's various products, and reviewed the descriptions, including the safety information. Plaintiff Cusick believed that the UPPAbaby Mesa Max car seat would be a safe and reliable car seat, and based on the information she read and considered, Plaintiff Cusick ultimately purchased the UPPAbaby Mesa Max car seat.

54. Had Defendant disclosed its knowledge of the defect, Plaintiff Cusick would have seen such disclosures and been aware of them. Defendant's omission

of this knowledge was material to Plaintiff Cusick. Like all class members, had Plaintiff Cusick seen such disclosures and been aware of the defect, she would not have purchased the UPPAbaby Mesa Max car seat or would have paid less for it.

55. After removing the infant insert at the recommended time, Plaintiff Cusick noticed her baby sink into a "C" position with the chin touching the chest. The baby's head was tilting forward and dangerously close to the chest, causing distress, excessive drooling, and foaming at the mouth. This resulted in significant and worsening discomfort, crying, and difficulty breathing during car rides. On or around July 24, 2024, Plaintiff Cusick contacted UPPAbaby customer service to express concerns about her baby's safety and comfort. She explained her baby's chin was being pushed into her chest, causing the baby to bubble and foam at the mouth, and cry whenever she was in the car seat even though she was otherwise content. Plaintiff Cusick requested an exchange or return of the car seat, which Defendant did not acknowledge and instead requested Plaintiff Cusick send pictures of the baby in the car seat to attempt to adjust the positioning. Plaintiff Cusick found this response unacceptable given the cost of the car seat and the issues she had already explained her baby was having when seated in the car seat according to Defendant's instructions.

56. As a result of the defect, Plaintiff Cusick lost confidence in the ability of the car seat to provide safe transportation for her baby. Plaintiff Cusick will be unable to rely on UPPAbaby's advertising or labeling in the future, and so she will not purchase another UPPAbaby car seat, although Plaintiff Cusick would consider doing so were the Defect remedied.

**Plaintiff Alexander Pena**

57. Plaintiff Alexander Pena is domiciled in and is a citizen of California.

58. On or around December 5, 2023, in or around Los Gatos, California, Plaintiff Pena purchased an UPPAbaby Mesa Max car seat online from the UPPAbaby website and registered it on the UPPAbaby website in March 2024. On

or around February 20, 2024, Plaintiff Pena purchased a second UPPAbaby Mesa Max car seat online from the Bloomingdale's website and registered it on the UPPAbaby website in May 2024.

59.     Plaintiff Pena purchased the UPPAbaby car seats primarily for personal, family, or household purposes. At all times, Plaintiff Pena, like all Class Members, used the car seats in a foreseeable manner, pursuant to instructions, and in the manner in which they were intended to be used.

60.     Passenger safety and reliability were important factors were important factors in Plaintiff Pena's decision to purchase the UPPAbaby Mesa Max car seat. Before purchasing the UPPAbaby Mesa Max car seats, Plaintiff Pena reviewed the website where he purchased the car seat and researched information about the car seats including, but not limited to, reviewing the UPPABaby website, reviewing other websites such as BabyList and Buyer's Guides, reviewing the descriptions on such websites for reviews and safety information, visiting a Nordstrom and seeing the UPPABaby car seat physically, viewing images on the package and on the websites that showed images of the baby was happy and safe, reviewing YouTube channels that showed videos of the UPPABaby car seats, including third parties on YouTube who had made reviews on the UPPABaby car seat, and reviewing all the descriptions therein, including the safety information provided. Plaintiff Pena believed that the UPPAbaby Mesa Max car seat would be a safe and reliable car seat, and based on the information he read and considered, Plaintiff Pena ultimately purchased the UPPAbaby Mesa Max car seats.

61.     Had Defendant disclosed its knowledge of the defect, Plaintiff Pena would have seen such disclosures and been aware of them. Defendant's omission of this knowledge was material to Plaintiff Pena. Like all class members, had Plaintiff Pena seen such disclosures and been aware of the defect, he would not have purchased the UPPAbaby Mesa Max car seat or would have paid less for it.

62.     Plaintiff Pena started using the Mesa Max car seat when his baby was

FIRST AMENDED CLASS ACTION COMPLAINT

a newborn. After removing the infant insert once the baby reached eleven (11) pounds, as recommended by Defendant, the baby's positioning in the seat became problematic, causing the child to sink into a "C" position with the chin touching the chest. This resulted in significant and worsening discomfort, excessive crying, and difficulty breathing during car rides. Plaintiff Pena could not drive more than 30 minutes with the baby due to her crying and discomfort in the car seat. Despite attempts to adjust the seat, the baby continued to suffer from respiratory issues, drooling, and distress. At first, Plaintiff Pena assumed the baby's discomfort was due to being in the car. However, he eventually realized it was due to the UPPAbaby Mesa Max car seat. Plaintiff Pena then received the foam insert provided by Defendant as an attempt to cure the problem, but it failed to fix or improve the child's positioning. After six months, Plaintiff Pena replaced the car seats with car seats from another manufacturer. However, Plaintiff Pena never received a refund or resolution from Defendant.

63.     As a result of the defect, Plaintiff Pena lost confidence in the ability of the car seat to provide safe transportation for his baby, and after six months of use, Plaintiff Pena replaced the car seat with another company, which greatly improved, if not eliminated, all issues the baby was experiencing with the UPPAbaby Mesa Max car seat. Plaintiff Pena never received a refund or resolution from Monahan. Plaintiff Pena will be unable to rely on UPPAbaby's advertising or labeling in the future, and so he will not purchase another UPPAbaby car seat, although Plaintiff Pena would consider doing so were the Defect remedied.

**Plaintiff Joey Zaokopny**

64.     Plaintiff Joseph Zaokopny, who goes by his preferred name Joey, is domiciled in and is a citizen of California

65.     On or around February 18, 2024, in Lincoln, California, Plaintiff Zaokopny purchased an UPPAbaby Mesa Max car seat online from the Saks Fifth Avenue website and registered the car seat on the UPPAbaby website thereafter.

66.    Plaintiff Zaokopny purchased his car seat primarily for his personal, family, or household purposes. At all times, Plaintiff Zaokopny, like all Class Members, used the car seat in a foreseeable manner, pursuant to instructions, and in the manner in which it was intended to be used.

67.    Passenger safety and reliability were important factors in Plaintiff Zaokopny's decision to purchase the UPPAbaby Mesa Max car seat. Before purchasing the UPPAbaby Mesa Max car seat, Plaintiff Zaokopny reviewed the website where he purchased the car seat and researched information about the car seat including, but not limited to, visiting a Nordstrom and Pottery Barn Kids and reviewing the UPPAbaby car seat physically at such locations, reviewing the UPPABaby website, researching reviews online, reviewing images on the package and online, and reading the descriptions on the package, online, and elsewhere including the safety information. Plaintiff Zaokopny believed that his UPPAbaby car seat would be a safe and reliable car seat. Based on the information he read and considered, Plaintiff Zaokopny ultimately purchased the UPPAbaby Mesa Max car seat.

68.    Had Defendant disclosed its knowledge of the defect, Plaintiff Zaokopny would have seen such disclosures and been aware of them. Defendant's omission of this knowledge was material to Plaintiff Zaokopny. Like all class members, had Plaintiff Zaokopny seen such disclosures and been aware of the defect, he would not have purchased the UPPAbaby Mesa Max car seat or would have paid less for it.

69.    After removing the infant insert at the recommended time, Zaokopny noticed the baby's position worsened dramatically, with the baby sinking into a "C" position with the chin touching the chest. This resulted in significant and worsening discomfort and excessive crying. After using the car seat for only one (1) month, Zaokopny replaced it with a car seat from another company. While Zaokopny did receive a foam insert from Defendant, by that time, he had already switched car

seats and no longer trusted the company.

70.    As a result of the defect, Plaintiff Zaokopny lost confidence in the ability of the car seat to provide safe transportation for his baby, and after more than a month of use, Plaintiff Zaokopny replaced the car seat. Plaintiff Zaokopny will be unable to rely on UPPAbaby's advertising or labeling in the future, and so he will not purchase another UPPAbaby car seat, although Plaintiff Zaokopny would consider doing so were the Defect remedied.

## CLASS ACTION ALLEGATIONS

71.    Plaintiffs bring this lawsuit as a class action on behalf of themselves and all others similarly situated as members of the proposed Class pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) and/or (b)(2). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

72.    Plaintiffs' proposed Class consists of and is defined as follows:

> **Class:** All California residents who purchased, other than for resale, an UPPAbaby Mesa Max, Mesa V2, and/or Aria car seat, and who are "consumers" within the meaning of California Civil Code § 1761(d). ("Class").

73.    Excluded from the Class are: (1) Defendant, any entity or division in which Defendant has a controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; and (3) those persons who have suffered personal injuries as a result of the facts alleged herein.

74.    Plaintiffs reserve the right to redefine the Class and to add subclasses as appropriate based on discovery and specific theories of liability.

75.    Members of the Class will be referred to hereinafter as "Class Members."

76.    <u>Numerosity</u>: The Class Members are so numerous joinder of all

members would be unfeasible and impractical. The membership of the entire Class is unknown to Plaintiffs at this time; however, given, on information and belief, Defendant sold thousands of car seats nationwide during the Class Period, it is reasonable to presume the members of the Classes are so numerous joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

77.   Commonality:  There are common questions of law and fact as to Class Members which predominate over questions affecting only individual members, including, but not limited to:

(a)   Whether the class car seats suffer from defects relating to their "C" shape;

(b)   Whether the "C" shape defect constitute an unreasonable safety risk;

(c)   Whether Plaintiffs and the other Class Members are entitled to equitable relief, including but not limited to a preliminary and/or permanent injunction;

(d)   Whether Defendant breached the implied warranty of merchantability pursuant to the Song-Beverly Act or Magnuson-Moss Warranty Act;

(e)   Whether Defendant engaged in unfair business practices in violation of California Business & Professions Code sections 17200, *et seq.*;  and

(f)   The appropriate amount of damages, restitution, or monetary penalties resulting from Defendant's violations of California law.

78.   Typicality:  Plaintiffs are qualified to, and will, fairly and adequately protect the interests of each Class Member with whom they are similarly situated, and Plaintiffs' claims (or defenses, if any) are typical of all Class Members as demonstrated herein.

79.   Adequacy:  Plaintiffs are qualified to, and will, fairly and adequately protect the interests of each Class Member with whom they are similarly situated,

FIRST AMENDED CLASS ACTION COMPLAINT

as demonstrated herein. Plaintiffs acknowledge they have an obligation to make known to the Court any relationship, conflicts, or differences with any Class Member. Plaintiffs' attorneys, the proposed Class Counsel, are versed in the rules governing class action discovery, certification, and settlement. Plaintiffs have incurred, and throughout the duration of this action, will continue to incur costs and attorneys' fees which have been, are and will be necessarily expended for the prosecution of this action for the substantial benefit of each Class Member.

80. Predominance: Questions of law or fact common to the Class Members predominate over any questions affecting only individual members of the Class. The elements of the legal claims brought by Plaintiffs and the Class are capable of proof at trial through evidence which is common to the Class rather than individual to its members.

81. Superiority: Plaintiffs and the Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of the individual Class Members' claims, it is likely only a few Class Members could afford to seek legal redress for Defendant's misconduct. Absent a class action, Class Members will continue to incur damages and Defendant's misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation: class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

82. The Class may also be certified because:

     a.    the prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying

adjudication with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant;

b.     the prosecution of separate actions by individual Class Members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class Members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

c.     Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

## TOLLING OF THE STATUTE OF LIMITATIONS

83.     Because the defect is undetectable until it manifests, Plaintiffs and Class Members were not reasonably able to discover the problem until after purchasing the class car seats, despite exercise of due diligence.

84.     Plaintiffs and the Class Members had no realistic ability to discern the class car seats were defective due to their "C" shape. Therefore, the discovery rule is applicable to the claims asserted by Plaintiffs and the Class Members.

85.     Plaintiffs are informed and believe and based thereon allege Defendant has known of the defect since at least 2022 and has concealed from or failed to alert owners of the class car seats of the defective nature of the "C" shape.

86.     Any applicable statute of limitation has therefore been tolled by Defendant's knowledge, active concealment, and denial of the facts alleged herein. Defendant is further estopped from relying on any statute of limitation because of its concealment of the defective nature of the class car seats' "C" shape.

87.

FIRST AMENDED CLASS ACTION COMPLAINT

## FIRST CAUSE OF ACTION

### Breach of Implied Warranty

### (Song-Beverly Consumer Warranty Act,

### Cal. Civ. Code §§ 1792 and 1791.1, *et seq.*)

88. Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

89. Defendant is, and at all relevant times was, a merchant engaged in the business of selling, among other things, the class car seats.

90. Plaintiffs and Class Members purchased the class car seats.

91. Defendant, as the designer, manufacturer, distributer, and seller of the class car seats warranted, both expressly and impliedly, as set forth more fully above, the class car seats would, among other things, be safe for babies to sit in, perform as intended, were free from defects, and were fit for their ordinary purpose.

92. Defendant breached the duty of implied warranty by selling the class car seats in a manner which did not conform to the promises or affirmations of fact made by Defendant, set forth above, including those made on the labeling and packaging because they were defective.

93. As a direct and proximate result of these misrepresentations, Plaintiffs and Class Members have been damaged in an amount to be proven at trial. The damages suffered by Plaintiffs and Class Members include, but are not limited to, the monies paid to Defendant for products.

## SECOND CAUSE OF ACTION

### Breach of Implied Warranty

### (Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.*)

94. Plaintiffs incorporate by reference each proceeding and succeeding paragraph as applicable as though fully set forth at length herein.

95. Plaintiffs and Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

FIRST AMENDED CLASS ACTION COMPLAINT

96. Defendant is a "supplier" and "warrantor" within the meaning of 15 U.S.C. § 2301(4)-(5).

97. The class car seats are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

98. Defendant impliedly warranted the class car seats were of merchantable quality and fit for such use.

99. Contrary to the applicable implied warranties, the class car seats at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and the Class Members with reliable and safe car seats in which babies can sit in a safe position.

100. The amount in controversy of the Plaintiffs' individual claim meets or exceeds the sum or value of $25. In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

101. Defendant has been afforded a reasonable opportunity to cure its breach of implied warranty. Plaintiffs, on their own behalf, and on behalf of Class Members, have provided Defendant reasonable notice of the breach of the implied warranties through their CLRA letters. Defendant has also received reasonable notice of the breach through negative customer comments on Defendant's website, through negative comments on various consumer websites, through letters to Defendant, and through complaints via customer service, and otherwise.

## THIRD CAUSE OF ACTION

## Violation of Unfair Competition Law

## (Cal. Bus. & Prof. Code §§ 17200, *et seq.*)

102. Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

103. Defendant need only have violated one of the various provisions of the Unfair Competition Law to be found strictly liable under this cause of action.

FIRST AMENDED CLASS ACTION COMPLAINT

104. Defendant's conduct constitutes "unfair" business acts and practices within the meaning of California Business and Professions Code sections 17200, *et seq.* because any utility for Defendant's conduct is outweighed by the gravity of the consequences to Plaintiffs and Class Members, and because its conduct was injurious to consumers, offended public policy, and was unethical and unscrupulous. Defendant's sale of the class car seats to Plaintiffs and Class Members was an "unfair" business practice: Plaintiffs and Class Members were provided a defective product which did not conform to implied warranties given by Defendant. Plaintiffs also assert a violation of public policy by making false, untrue, and/or misleading statements, and omissions of fact, to consumers. Defendant's violation of consumer protection and unfair competition laws in California and other states resulted in harm to consumers.

105. Defendant's conduct is also unlawful within the meaning of California Business and Professions Code sections 17200, *et seq.* in that it constitutes:

(a)   A violation of Cal. Civ. Code §§ 1792, 1791.1, and 1793;

(b)   A breach of implied warranty of merchantability pursuant to the Uniform Commercial Code, as adopted by California (Cal. Com. Code § 2314); and

(c)   A violation of 15 U.S.C. § 2301.

106. There were reasonable alternatives available to Defendant to further Defendant's its legitimate business interests, other than the conduct described herein.

107. Defendant's conduct caused and continues to cause injury to Plaintiffs and the other Class Members. Plaintiffs and Class Members have suffered and will continue to suffer injury in fact and have lost money as a result of Defendant's conduct in the form of monies paid for the class car seats.

FIRST AMENDED CLASS ACTION COMPLAINT

108. Defendant has thus engaged in unlawful and unfair business acts entitling Plaintiffs and Class Members to judgment and equitable relief against Defendant, as set forth in the Prayer for Relief.

109. Additionally, pursuant to Business and Professions Code section 17203, Plaintiffs and Class Members seek an order requiring Defendant to immediately cease such unlawful and unfair business practices and to correct its actions.

110. Defendant's conduct, as described above, violates California Business & Professions Code sections 17200, *et seq.* and entitles Plaintiffs and Class Members to restitution and injunctive relief.

111. To this day, Defendant continues to violate the California Business and Professions Code sections 17200, *et seq.*by continuing to advertise its class car seats in a manner which is likely to deceive the consuming public.

112. As a direct and proximate result of Defendant's violation of California Business and Professions Code sections 17200, *et seq.*, Plaintiffs and Class Members have suffered and will continue to suffer injury in fact and actual damages.

113. As a proximate result of Defendant's violation of California Business and Professions Code sections 17200, *et seq.*, Defendant has been unjustly enriched and should be required to make restitution to Plaintiffs and Class Members or disgorge its ill-gotten profits pursuant to Business & Professions Code section 17203.

114. Pursuant to California Business & Professions Code section 17203, Plaintiffs, individually and on behalf of the Class, seek an order requiring Defendant to immediately cease such acts of unfair competition and enjoining Defendant from continuing to conduct business via the unlawful or unfair business acts and practices complained of herein and from failing to fully disclose the true nature of its misrepresentations.

FIRST AMENDED CLASS ACTION COMPLAINT

115. Plaintiffs, on behalf of themselves and all others similarly situated, further request injunctive relief in the form of restitution and disgorgement and all other relief allowed under section 17200, plus interest attorneys' fees and costs pursuant to, *inter alia*, Cal. Code of Civ. Proc. section 1021.5.

116. Pursuant to California Business & Professions Code section 17203, Plaintiffs, individually and on behalf of the Class, seek a mandatory injunction ordering Defendant to institute and carry out a prompt, complete, and effective recall and a free replacement/repair program, including an order requiring Defendant to issue direct mail notice to each Class Member, whether a current or former owner, notifying former owners of the availability of the recall and the opportunity for reimbursement, notifying current owners of the defect, its details and safety concerns, and the prompt availability of a recall repair or free replacement.

## MISCELLANEOUS

117. Plaintiffs and Class Members allege they have fully complied with all contractual and other legal obligations and fully complied with all conditions precedent to bringing this action or all such obligations or conditions are excused.

## PRAYER FOR RELIEF

118. Plaintiffs, on behalf of themselves and the Class, request the following relief:

    a)    An order certifying the proposed Class, appointing Plaintiffs as Representatives of the Class, and designating the undersigned counsel as Class Counsel;

    b)    An award to Plaintiffs and the Class for compensatory, exemplary, and statutory damages, including punitive damages, as allowable, and including interest, in an amount to be proven at trial;

FIRST AMENDED CLASS ACTION COMPLAINT

c)   Any and all damages and remedies provided pursuant to the Song-Beverly Act, including California Civil Code section 1794 and for breach of the implied warranty of merchantability and fitness for use under the laws of the State of California;

d)   An order permanently enjoining Defendant from continuing the unlawful and unfair business practices alleged in this Complaint, pursuant to California Business & Professions Code section 17203;

e)   A mandatory injunction ordering Defendant to institute and carry out a *prompt, complete, and effective* recall and a free replacement/repair program, including an order requiring Defendant to issue direct mail notice to each Class Member, whether a current or former owner, notifying former owners of the availability of the recall and the opportunity for reimbursement, notifying current owners of the defect, its details and safety concerns, and the prompt availability of a recall repair or free replacement, pursuant to California Business & Professions Code section 17203;

f)   Additional equitable relief, in the form of costs, restitution, and disgorgement, in an amount to be determined at trial;

g)   All reasonable and necessary attorneys' fees and costs provided by statute, common law, or the Court's inherent power;

h)   Pre- and post-judgment interest; and

i)   All other relief, general or special, legal, and equitable, to which Plaintiffs and Class Members may be justly entitled as deemed by the Court.

FIRST AMENDED CLASS ACTION COMPLAINT

Dated: November 3, 2025

Respectfully submitted,

Capstone Law APC

By: */s/ Shahin Rezvani*
Cody R. Padgett
Shahin Rezvani

Attorneys for Plaintiffs

FIRST AMENDED CLASS ACTION COMPLAINT

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure, 38(b) and Central District of California Local Rule 38-1, Plaintiffs hereby demand a trial by jury of all issues in this action so triable.


Dated:  November 3, 2025                        Respectfully submitted,

Capstone Law APC


By: */s/ Shahin Rezvani*
Cody R. Padgett
Shahin Rezvani

Attorneys for Plaintiffs

FIRST AMENDED CLASS ACTION COMPLAINT